## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID CHARONIS, | Docket No. 2:23-cv-456-RJC |
| *Plaintiff,* | Civil Action |
| v. | |
| FIRST CHURCH OF CHRIST, SCIENTIST, PITTSBURGH, | |
| *Defendant.* | JURY TRIAL DEMANDED |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.      INTRODUCTION

Plaintiff's claim of violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201-219, and the Allegheny County False Claims Act by Defendant is facially defective as a matter of law, even under the narrow standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The facts pled in his complaint show that Plaintiff's employment by Defendant fall under the First Amendment to the United States Constitutions' ministerial exception as most recently articulated by the Supreme Court in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020). Therefore, Plaintiff's Complaint must be dismissed with prejudice.

### II.      STANDARD OF REVIEW

The standards governing motions to dismiss are well-settled. A party moving to dismiss under Federal Rule of Civil Procedure 12(b)(6) bears the burden to prove that the other party has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, assuming they are true, to state a facially plausible

claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), The Supreme Court has stressed that a claim is plausible if and "…when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court must conduct a three-part analysis when considering a Rule 12(b)(6) motion. *Interlink Prods. Int'l, Inc. v. F. & W Trading LLC*, No. 15-1340, 2016 U.S. Dist. LEXIS 44256, *7 (D.N.J. Mar. 31, 2016) (citing *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)). First, the court must "take note of the elements a plaintiff must plead to state a claim." *F & W Trading LLC*, 2016 U.S. Dist. LEXIS 44256, at *7 (*quoting Ashcroft v. Iqbal*, 556 U.S. at 675). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next "determine whether the facts alleged in the complaint are sufficient to show that the Plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Iqbal*, 556 U.S. at 679).

## III.    ARGUMENT

### a.    Background.

Plaintiff's Complaint alleges that he was employed in the position of "Organist." (ECF 1, ¶5). Plaintiff claims that Defendant, First Church of Christ, Scientist, Pittsburgh, violated the federal Fair Labor Standards Act and the Allegheny County False Claims Act by re-converting his employment status to a 1099 independent contractor after a brief period as a W-2 employee, and then allegedly retaliating against him by terminating his W-2 employment for reporting the assumed "violation." *See, generally,* ECF 1, Exhibit C.  Plaintiff alleged in his Complaint that

"converting the church musicians to independent contractors would be improper under the FLSA and Pennsylvania Tax Code." *See* ECF 1, Exhibit C at ¶26. Plaintiff further alleged that he was then retaliatorily discharged under the FLSA and the ACFCA. Even if all allegations of Plaintiff's Complaint are accepted as true—which Defendant denies—Plaintiff nonetheless failed to state a claim upon which relief can be granted because the circumstances described in his Complaint fall under the First Amendment's ministerial exception.

> **b.   The Free Exercise Clause of the First Amendment protects the right of religious institutions "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine."[1]**

Under the Free Exercise Clause of the First Amendment to the Constitution, courts are bound to stay out of employment disputes involving certain important positions with churches and other religious institutions. *Our Lady of Guadalupe* 140 S. Ct., at 2060. This precludes the bringing of causes of actions under employment laws such as the FLSA or the ACFCA by persons holding these positions. While this doctrine is known as the "ministerial exemption" because the individuals involved in early cases on this subject were ministers, the broad principle of church autonomy dictates a much broader application. *Id.*, at 2060-2061.

In *Our Lady of Guadalupe*, the Supreme Court articulated a broad and flexible standard that examines whether an employee performs religious duties. *Id.*, at 2066. It was enough that the Plaintiffs, Catholic school teachers who had no religious training, were expected to help the schools carry out their mission of "educating and forming students in the Catholic faith" and "expected to guide their students, by word and deed, toward the goal of living their lives in accordance with the faith." *Id.* They did not need formal religious titles, and the Court deferred to the Church's explanation of their role in the life of the religion. *Id.* ("In a country with the religious

---

[1] *Our Lady of Guadalupe*, 140 S. Ct., at 2054.

diversity of the United States, judges cannot be expected to have a complete understanding and appreciation of the role played by every person who performs a particular role in every religious tradition").[2]

### c. Plaintiff is covered by the ministerial exception as a musician, as his music served to heighten the religious message of the Church

Plaintiff Charonis is eligible for the ministerial exception. While Plaintiff's complaint does not describe his job duties beyond stating that he was an "organist," the role of an organist in a church is commonly understood, and the Court should construe his role, at minimum, as including playing the organ during worship services. The Seventh, Fifth, and Fourth Circuits have held as a matter of law that that music is regularly used by religious organizations to heighten the listener's experience and thereby further the organization's religious mission. *See generally, EEOC v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795 (4th Cir. 2000). *Sterlinski v. Catholic Bishop of Chi.,* 934 F.3d 568 (7th Cir. 2019); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169 (5th Cir. 2012); and *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006). Musicians communicate a message that goes beyond words alone because they "must put their hearts into playing, or they won't be effective." *Sterlinski* 934 F.3d at 571. "A priest who delivered the homily in a monotone would not advance the church's religious mission; no more does an organist who proclaims that he plays mechanically." *Id*.

In *Tomic v. Catholic Diocese of Peoria*, the Seventh Circuit addressed an employment law claim from a plaintiff similar in status to the Plaintiff herein—a former music director and organist of a Catholic diocese. 442 F.3d 1036 (7th Cir. 2006). That plaintiff brought an age-discrimination claim against the Church and the diocese itself. *See generally, id*. The Seventh Circuit refused to

---

[2] *See, also* Department of Labor Opinion Letter FLSA2021-2, dated January 8, 2021, recognizing a religious exemption to the FLSA, attached hereto as Exhibit A.

accept Tomic's position that a church's organist is no different from the church's janitor, for example, in that they do not have religious duties. *Id*. at 1040.   Judge Posner challenged the plaintiff's attempt to minimize his own value to the church, reasoning "there is no one way to play music. If Tomic played the organ with a rock and roll beat, or played excerpts from Jesus Christ Superstar, at an Easter Mass he would be altering the religious experience of the parishioners." *Id*. In light of this consideration, the Seventh Circuit concluded that this plaintiff-organist "forfeited his rights" to bring an employment discrimination claim because of the ministerial exception.  *Id*. at 1041.

Similarly, the Fifth Circuit affirmed the dismissal of a suit raised by the Music Director of a Catholic church on the basis of the ministerial exception. *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169 (5th Cir. 2012). The plaintiff alleged he was wrongfully terminated by the Church in violation of federal anti-employment discrimination laws. *Id*.  Refusing to align his role as Music Director with the type of work allocated to ministers, this plaintiff argued that he "merely played the piano at Mass and that his only responsibilities were keeping the books, running the sound system, and doing custodial work, none of which was religious in nature." *Id*. at 177. Similar to the opinion of the Seventh Circuit, the Fifth Circuit did not accept the plaintiff's effort to overemphasize the secular duties involved in his role as Music Director. *Id*. citing *Hosanna–Tabor*, 132 S.Ct. at 709. Instead, the court found that the Music Director's musical duties positioned the plaintiff as "an integral part of Mass" and "a lay liturgical minister actively participating in the sacrament of the Eucharist." *Cannata*, 700 F.3d at 177. Most succinctly, the Fifth Circuit found that "there is no genuine dispute that Cannata played an integral role in the celebration of Mass and that by playing the piano during services, Cannata furthered the mission of the church and helped convey its message to the congregants." *Id*.

Another illustrative example of musicians falling under the ministerial exception can be found in the Fourth Circuit, which held that a gender discrimination claim under Title VII by a music director for a Catholic church was barred under the ministerial exception. *EEOC v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795 (4th Cir. 2000). The court reasoned that the exception applies to musicians as much as to the ministers themselves because "music is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred." *Id.* at 802. The court explained that the ministerial exception is "robust" in its application. *Id.* "The exception precludes any inquiry whatsoever into the reasons behind a church's ministerial employment decision. The church need not, for example, proffer any religious justification for its decision, for the Free Exercise Clause 'protects the act of the decision rather than a motivation behind it.'" *Id.* (quoting *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1169 (4th Cir. 1985)).

The claims raised by Mr. Charonis are parallel to those raised by these plaintiffs. Much like the above-described plaintiffs in the Seventh, Fifth, and Fourth Circuits, Plaintiff Charonis' responsibilities as an organist were significant to its spiritual and pastoral mission. Plaintiff's music elevated and promoted the Defendant's message in a way that words alone could not.  In his role as an organist for the church's services, the Plaintiff conveyed a spiritual message and thereby furthered the mission of the Church. Plaintiff falls squarely within the so-called "ministerial exception," despite not holding the title of "minister." Therefore, Plaintiff's Complaint should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be granted and all claims asserted against the Defendant in this action should be dismissed, with prejudice. Mr. Charonis'

organist role was important to the Church's religious mission, as other federal circuits have held

as a matter of law. To hold otherwise would violate the Church's First Amendment right to decide

for itself, free from state interference, matters of church government.

Dated: April 21, 2023                       Respectfully submitted,

                                            OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

                                            /s/ Andrew J. Horowitz, Esq.
                                            Andrew J. Horowitz, Esq
                                            Pa. Id. No. 311949
                                            andrew.horowitz@obermayer.com
                                            Mary A. Shahverdian, Esq.
                                            Pa. Id. No. 329048
                                            mary.shahverdian@obermayer.com
                                            525 William Penn Place, Suite 1710
                                            Pittsburgh, PA 15219
                                            Telephone:    (412) 566-1500
                                            Facsimile:    (412) 281-1530

                                            *Counsel for Defendant First Church of Christ, Scientist, Pittsburgh*